Argued and submitted October 30, 1997, reversed and remanded February 4, 1998

# SAFEWAY, INC.,
a Maryland corporation,
*Appellant,*

*v.*

# OREGON PUBLIC EMPLOYEES UNION,
*Respondent,*

*and*

# OREGON TAXPAYERS UNITED, INC.,
an Oregon corporation,
Jennifer Marie Murukas, Penny Jeannette Koistinen,
individually and on behalf of a class of persons
who seek to engage in initiative petitioning
at plaintiff's Oregon stores,
John Does 1 through 50, and Jane Does 1 through 50,
*Defendants.*

(9602-01075; CA A96331)

954 P2d 196

Charles F. Hinkle argued the cause for appellants. With him on the briefs was Stoel Rives LLP.

Lynn-Marie Crider argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

In February 1996, plaintiff Safeway, Inc. (Safeway) initiated this action for declaratory and injunctive relief against defendant Oregon Public Employees Union (OPEU),[1] seeking to enjoin OPEU and all persons in active concert and participation with OPEU from entering any property or premises owned or leased by Safeway to gather signatures on initiative petitions. Safeway alleged that in February 1996, members or employees of OPEU entered Safeway premises in Springfield and Portland[2] to solicit signatures on an initiative petition sponsored by the Minimum Wage Coalition. Safeway alleged that OPEU's actions constituted trespass, nuisance, inverse condemnation in violation of the state and federal constitutions,[3] violation of Safeway's free speech and free expression rights under the state and federal constitutions,[4] violation of the equal privileges and immunities clause of the state constitution,[5] and violation of the equal protection clause of the federal constitution.[6] Safeway further alleged that OPEU would continue to enter its premises to carry out petitioning activity unless enjoined. OPEU's answer admitted that its members or employees had solicited

---

[1] Oregon Taxpayers United and several individuals also were named defendants in the court below, but the issues on appeal pertain only to OPEU.

[2] According to the record, OPEU members stood in front of the stores or near the doors to the stores in order to solicit signatures and did not block customer access.

[3] Article I, section 18, of the Oregon Constitution, provides, in part, that "[p]rivate property shall not be taken for public use * * * without just compensation[.]" The Fifth Amendment to the United States Constitution provides, in part, that private property shall not "be taken for public use, without just compensation."

[4] Article I, section 8, of the Oregon Constitution, provides: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write or print freely on any subject whatsoever; but every person shall be responsible for the abuse of this right." The First Amendment to the United States Constitution provides, in part: "Congress shall make no law * * * abridging the freedom of speech[.]"

[5] Article I, section 20, of the Oregon Constitution, provides: "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

[6] The Fourteenth Amendment to the United States Constitution provides, in part, that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

signatures on an initiative petition on Safeway's premises on the date in question and admitted that it claimed the right to enter Safeway's premises to solicit signatures on initiative petitions pursuant to Article IV, section 1, of the Oregon Constitution.[7]

After a hearing on the matter in April 1996, Safeway obtained a preliminary injunction pending trial that enjoined OPEU and all persons in active concert and participation with it from entering the premises of any Safeway store in Oregon to solicit signatures on initiative petitions. In October 1996, OPEU moved to dismiss the action on the ground that there was no longer a justiciable controversy between the parties, because the initiative petition drive by the Minimum Wage Coalition had been completed in July 1996, and OPEU had no plans to engage in further initiative petitioning activity. Shortly thereafter, Safeway filed a motion to certify a class of defendants, with OPEU and Oregon Taxpayers United (OTU) as representatives of a class consisting of "all persons who seek to engage in initiative petitioning at plaintiff's stores." The trial court granted OPEU's motion to dismiss the action as moot and denied Safeway's motion to certify a class of defendants. On appeal, Safeway challenges both of those rulings. For the following reasons, we affirm in part and reverse in part.

We first address Safeway's claim that the trial court erred in dismissing as moot its claims against OPEU. Safeway asserts that both its state and federal claims against OPEU present justiciable controversies, primarily on the basis that all of the claims involve a situation that is "capable of repetition, yet evading review." OPEU responds that, concerning the state claims, the "capable of repetition, yet evading review" exception to the mootness doctrine has been firmly rejected by the Oregon Supreme Court. *See Barcik v. Kubiaczyk*, 321 Or 174, 188-89, 895 P2d 765 (1995). As to Safeway's federal claims, OPEU maintains that they do not satisfy the criteria enumerated in federal cases concerning

---

[7] Article IV, section 1, of the Oregon Constitution, has been interpreted to permit the gathering of signatures on initiative petitions at certain shopping centers that are open to the public. *Lloyd Corporation v. Whiffen*, 315 Or 500, 849 P2d 446 (1993).

the "capable of repetition, yet evading review" exception to mootness.[8]

Under state law, a justiciable controversy exists if the parties have adverse interests and the court's decision in the matter will have some practical effect. *Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993). In this case, the trial court reasoned that, because OPEU had no current plans to engage in initiative petitioning at Safeway stores,[9] no live controversy existed between the parties. The question before us is whether a justiciable controversy exists where a defendant admits having gone onto some of plaintiff's properties in the past, admits that it claims a constitutional right to go onto at least some of plaintiff's properties, but asserts that it has no current plans to do so again. For the following reasons, we conclude that a justiciable controversy exists between the parties on both the state and the federal claims and that the trial court erred in dismissing the action on mootness grounds.

In *Barcik*, the court set forth the standards pertaining to mootness and justiciability in the context of an action by students against a school district concerning censorship of student publications. In that case, the school had disciplined students, some of whom were high school seniors, for distribution of underground publications and had censored an article in a school newspaper during the 1991-92 school year. Various students and their parents brought suit against the school district alleging violations of their state and federal constitutional rights and seeking declaratory, injunctive, and monetary relief. In October 1992, the trial court granted the plaintiffs some, but not all, of the declaratory and injunctive relief they sought. *Barcik,* 321 Or at 179-80. This court, *sua sponte*, reversed and remanded with instructions to dismiss

---

[8] OPEU also argues that the justiciability of all of plaintiff's claims should be decided under state law and that to the extent that the Oregon Supreme Court has held to the contrary in *Barcik v. Kubiaczyk*, 321 Or 174, 895 P2d 765 (1995), its "holding should be revisited." That argument would better be pursued in the Oregon Supreme Court; we are not free to ignore that court's decision.

[9] In support of its motion to dismiss, OPEU provided an affidavit from its executive director stating that OPEU had no plans at that time to engage in initiative petitioning activity. The trial court deemed that information to be incorporated into OPEU's answer pursuant to ORCP 19 A.

the complaint on the ground that the claims were moot, because the senior plaintiffs had graduated from the high school before the circuit court had entered judgment. *Id.* at 181. On review, the Oregon Supreme Court concluded that certain claims were moot and certain claims were not moot.

Concerning the state law claims, the *Barcik* court first addressed whether the claims of most of the plaintiffs who had graduated from high school in 1992 were moot. Citing *Kay v. David Douglas Sch. Dist. No. 40*, 303 Or 574, 738 P2d 1389 (1987), *cert den* 484 US 1032 (1988) (no justiciable controversy where plaintiff sought to enjoin prayer at school commencement and commencement occurred before case was decided), the court held that the plaintiffs who had graduated, except for one, Barcik, the plaintiff who had been disciplined for distributing an underground publication, had alleged no facts entitling them to relief from future practices of the defendants, suffered no continuing harm from the alleged violation of their state constitutional rights, and had no state constitutional rights that were being violated at the time the trial court entered its judgment. Thus, the state constitutional claims of those plaintiffs were held not to be justiciable. *Id.* at 187. As to Barcik, the court held that a justiciable controversy did exist concerning his state constitutional claims, because there were references to the discipline in his academic record, "on which judgment effectively may operate." *Id.* at 192. As to Barcik's claim for *prospective* relief, however, the court concluded:

> "Like the other Senior plaintiffs, Barcik cannot be affected by a declaration that future enforcement of the regulations is unconstitutional. Neither can he be affected by a declaration restraining the district from enforcing those regulations in the future, because *he will not be subject to those regulations in the future.*" *Id.* (Emphasis supplied.)

In sum, the senior plaintiffs' claims for prospective relief were moot because those plaintiffs would never again be subject to the challenged regulations and practices of the defendants.

■ This case differs significantly from *Barcik*. Although both parties have focused on the "petitioning season" during which the Minimum Wage Coalition petition was circulated,

and its limited duration, the situation is not analogous to the facts in *Barcik*. Safeway did not seek to enjoin OPEU only from circulating the Minimum Wage Coalition petition during one "petitioning season." Unlike the high school students in *Barcik*, who had graduated and will never again be students at that high school, Safeway will continue its commercial enterprise and initiative petitioners may choose to take up their petitioning activity on Safeway's premises in future "petitioning seasons." A party's declaration that it *may* not engage in the challenged conduct in the future does not render moot an action for injunctive relief. *See Gates v. McClure*, 284 Or 685, 689, 588 P2d 32 (1978) ("mere voluntary cessation of illegal conduct does not necessarily moot a case for if it did, the wrongdoer would be free to return to his old ways").

The facts in this case in many respects are comparable to *Assoc. Reforestation v. State Workers' Comp. Bd.*, 59 Or App 348, 350-51, 650 P2d 1068, *rev den* 294 Or 295 (1982). In that case, the plaintiff sought a declaratory judgment that the defendant was subject to the workers' compensation laws. On the eve of trial, the defendant purchased workers' compensation insurance and then argued that the case was moot. We disagreed, noting that, although the defendant had acquired the insurance, it refused to acknowledge that it was legally required to do so; we further noted that the defendant could cancel the insurance at any time. We reasoned: "The essential controversy in this declaratory judgment action remains: plaintiff contends and defendant denies that defendant is legally required to maintain coverage for its workers." *Id.* The same is true here. The essence of the controversy is that Safeway contends that OPEU has no right to engage in petitioning activity on its premises, and OPEU contends that, at least with respect to some of Safeway's stores, it does have a right to engage in petitioning activity on Safeway's property.

Neither *Brumnett* nor *Oregon Republican Party v. State of Oregon*, 301 Or 437, 722 P2d 1237 (1986), relied on by OPEU, leads to a contrary conclusion. In *Brumnett*, the petitioner sought judicial review of a finding of the Psychiatric Security Review Board that he suffered from a mental disease or defect. *Brumnett*, 315 Or at 404. However, during the

pendency of the appeal, the petitioner was released unconditionally. *Id*. The petitioner argued that the case was not moot because of the possibility that the state could seek to recoup some of the costs of his care pursuant to statute. The court rejected that argument, holding that the mere possibility that the petitioner might be subject to a collateral consequence of his commitment at some future date did not make the case justiciable. *Id*. In *Oregon Republican Party*, the issue was whether the plaintiff's plan to provide self-addressed stamped envelopes to voters for use in a 1984 election violated certain election laws. 301 Or at 439. By the time the case was on appeal, the election in question was long past. The court determined that the controversy was moot but noted: "The Party could have saved the justiciability of this controversy by alleging that it intended to utilize the same plan in future elections; it did not do so." *Id*. at 440. This case resembles neither of those cases. Unlike *Brumnett*, Safeway does not allege the possibility of future collateral consequences of an action that has ceased but alleges that the challenged action itself will continue. Unlike *Oregon Republican Party*, Safeway alleges that the challenged action of signature gathering on its property by OPEU will occur in the future. We conclude that a live controversy exists between the parties and that the trial court erred in dismissing Safeway's state law claims as moot.

■    We turn to the question of whether plaintiff's federal law claims are moot. It is well established that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of powers to hear and determine the case, *i.e.*, does not make the case moot." *United States v. W.T. Grant Co.*, 345 US 629, 632, 73 S Ct 894, 97 L Ed 1303 (1953). In *City of Mesquite v. Aladdin's Castle, Inc.*, 455 US 283, 288-89, 102 S Ct 1070, 71 L Ed 2d 152 (1982), the court followed that rule in holding that a claim challenging the application of a city ordinance was not mooted by the city's revision of the ordinance. Noting that voluntary cessation of a challenged practice does not render a claim moot, the court stated that "[s]uch abandonment [of the challenged practice] is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the

existence of judicial power." *Id*. at 289. We conclude that, although state and federal justiciability requirements are different in some respects, *see Barcik*, 321 Or at 186-200 (identifying differences), plaintiff's federal claims are justiciable for the same reason that plaintiff's state claims are justiciable: Mere voluntary cessation of a challenged practice in a context in which the practice may be resumed does not render a claim challenging that practice moot, although it may be relevant to the propriety of enjoining the challenged practice.

■    We next consider Safeway's assertion that the trial court erred in denying its motions to certify a class of defendants, with OPEU acting as class representative. In July 1996, six months after it filed this action and almost two weeks after the "petitioning season" had ended, Safeway moved to add OTU as a defendant and to certify OPEU and OTU as representatives of a class of defendants of all people who seek to use Safeway's premises to solicit signatures on initiative petitions. In October 1996, Safeway renewed the motion after OTU had been added as a defendant. In November 1996, the trial court decided both OPEU's motion to dismiss as moot, discussed above, and Safeway's motion to certify a class of defendants. Because the court decided that the case against OPEU was moot, its ruling on the class action issue pertained solely to OTU as a class representative. The court identified as reasons for denying class certification that there had been no showing that OTU could adequately protect the interests of the proposed class, that there had been no showing that class certification would be a superior method of adjudicating the controversy, and that there would be management problems with the proposed class, particularly in terms of notice to class members. Subsequently, Safeway settled with OTU and dismissed the class action allegations against it.

On appeal, Safeway argues that the trial court should have certified a class of defendants with OPEU as its representative. We note that the trial court was never asked to decide that specific issue. The trial court was asked only to determine the propriety of designating OPEU *and* OTU as class representatives. Safeway asserted that OTU had "been one of the most active users of the initiative process in

Oregon in recent years." OPEU, on the other hand, had involved itself in only two initiative petitioning campaigns in its approximately fifty years of existence. Strictly speaking, Safeway has not preserved for appellate review the issue it now asserts. However, in light of our conclusion that the trial court erred in dismissing the claims against OPEU as moot, and because Safeway might renew its motion to certify a class with OPEU as representative on remand, we address the propriety of class certification, because it is likely to arise on remand.

■ ORCP 32 A provides, in part:

"One or more members of a class may * * * be sued as representative parties on behalf of all only if:

"(1) The class is so numerous that joinder of all members is impracticable;

"(2) There are questions of law or fact common to the class;

"(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;

"(4) The representative parties will fairly and adequately protect the interests of the class[.]"[10]

This court has stated that "[a]s a matter concerning judicial administration, the trial court's assessment of the utility of a class action is entitled to 'wide latitude.'" *Alsea Veneer, Inc. v. State of Oregon*, 117 Or App 42, 52, 843 P2d 492 (1992), *aff'd* 318 Or 33, 862 P2d 95 (1993), *quoting Newman v. Tualatin Development Co. Inc.*, 287 Or 47, 51, 597 P2d 800 (1979). The burden is on the plaintiff to demonstrate that the criteria have been met for class certification. For the following reason, we agree with the trial court that class action is not suitable here.

There undoubtedly are questions of law common to the proposed class, namely, whether initiative petitioners

---

[10] ORCP 32 B contains numerous other criteria that the court should also take into account in determining the suitability of class certification, should the trial court determine that the criteria of ORCP 32 A have been satisfied. Because of our conclusions concerning ORCP 32 A, we do not reach the parties' arguments concerning ORCP 32 B.

have rights to petition on Safeway premises. However, OPEU has taken the position in this litigation that it has the right to petition outside some, but not all, of Safeway's 92 Oregon stores. Given OPEU's position, it cannot be expected fairly and adequately to protect the interests of class members who would claim a constitutional right to gather petition signatures on Safeway premises at which OPEU does not claim such a right. The trial court did not err in failing to certify as a class of defendants "all persons who seek to use Safeway's premises to solicit signatures on initiative petitions," with OPEU as the class representative.

Reversed and remanded.